OWEN v. BIRMINGHAM FEDERAL SAVINGS AND
LOAN ASSOCIATION

1. BANKS AND BANKING—JOINT ACCOUNT—WITHDRAWAL—CHANGE
OF WITHDRAWAL REQUIREMENTS.

One depositor in a joint bank account requiring the signatures
of both parties to withdraw money does not have an absolute
right to change the account to one requiring only one signature
for withdrawals even though he was the depositor who had had
the account, which originally required only one signature for
withdrawal, changed to the two-signature withdrawal require-
ment.

2. BANKS AND BANKING—JOINT ACCOUNT—WITHDRAWAL—CHANGE
OF WITHDRAWAL REQUIREMENT—QUESTION OF FACT.

A jury question was created whether a depositor in a joint bank
account had the right to change the account from requiring
two signatures for withdrawal to requiring only one signature
for withdrawal where the depositor had been the one who had
the account, originally requiring only one signature for with-
drawal, changed to the two-signature requirement and where
the other joint depositor had requested the bank not to allow
any withdrawals without calling her.

3. EVIDENCE—COLLATERAL MATTERS—CROSS-EXAMINATION—DISCRE-
TION.

Allowing collateral matters to be brought out on cross-examina-
tion is in the discretion of the trial court; the appellate court
will not reverse except in cases of abuse.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 12] 10 Am Jur 2d, Banks § 497 et seq.
[3, 5] 53 Am Jur, Trials § 97.
[4] 41 Am Jur, Pleadings § 293.
[6] 5 Am Jur 2d, Appeal and Error § 623.
[7] 29 Am Jur 2d, Evidence § 251 et seq.
[8] 29 Am Jur 2d, Evidence § 615 et seq.
[9] 29 Am Jur 2d, Evidence § 661 et seq.
[1] 29 Am Jur 2d, Evidence § 666.
[1] 58 Am Jur, Witnesses § 491 et seq.

4. Pleadings—Amendment—Discretion.
   Allowing an amendment to the pleadings rests within the trial judge's discretion.

5. Evidence — Collateral Matters — Banks and Banking — Discretion.
   Refusal to allow evidence that some of the money from the sale of real estate owned by the plaintiff and her husband had been deposited in accounts in banks other than in the defendant-bank and had been withdrawn by the plaintiff was not an abuse of discretion where the issue in the case being tried was whether the defendant-bank was negligent in allowing the plaintiff's husband to withdraw funds from a joint account in its bank without the wife's signature.

6. Appeal and Error — Nonsupport — Sympathy — Preserving Question for Review.
   An appellate court will not review an objection that allowing the plaintiff to withdraw her claim for loss of a lien right, after having introduced evidence of her husband's nonsupport, and allowing her to explain why she withdrew the claim constituted reversible error where the defendant did not request instructions regarding the possible sympathy created by the evidence of nonsupport, even though the trial court stated that it would instruct on sympathy if requested to do so.

7. Evidence—Injunction—Service-Relevancy.
   Refusal to allow defendant to show that an injunction, issued at the request of plaintiff's husband, was not properly served, even though the injunction had been admitted into evidence, was not an abuse of discretion where the injunction had been admitted to show only that defendant had notice of plaintiff's divorce proceedings, because the service of the injunction was irrelevant to issue of the case—the defendant's negligence in allowing a withdrawal from a joint bank account.

8. Evidence—Impeachment—Affidavits—Admissions.
   An affidavit filed in another judicial proceeding by a party to the present action may be used against him for purposes of impeachment or as an admission against interest even if the party against whom it is sought to be used might be prejudiced by its use.

9. Evidence—Admissions—Party's Representative.
   Admissions by a party's representative are admissible in evidence.

10. Evidence—Admissions—Bank Tellers—Identity.

Admissions made by the tellers of a bank against the bank are not inadmissible solely because the witness cannot identify the particular tellers who made the statements.

11. Evidence — Privileges — Attorney-Client Privilege — Communication to Third Party.

The attorney-client privilege cannot be invoked to exclude evidence of communications between an attorney and his client which were intended to go to a third party.

12. Banks and Banking—Negligence—Evidence—Injunction—Actual Notice.

Allowing into evidence an injunction issued at the behest of plaintiff's husband and restraining defendant-bank from paying funds to the plaintiff, even though there had been no showing that the injunction was binding on the bank, was not an abuse of discretion where the issue at trial was the negligence of the bank in allowing plaintiff's husband to make a withdrawal from a joint account, because, even if not binding, the injunction showed that the bank had actual notice of the separate maintenance suit of the plaintiff and knew of her marital difficulties.

Appeal from Oakland, Clark J. Adams, J. Submitted Division 2 June 9, 1970, at Lansing. (Docket No. 7,583.) Decided October 5, 1970.

Complaint by Helen Owen against Birmingham Federal Savings and Loan Association, Henry F. Johnson, Marie E. Miller, and William F. Ludwig for return of funds withdrawn from a joint bank account. Judgment for plaintiff. Defendants appeal. Affirmed.

*Hartman, Beier, Howlett, McConnell & Googasian,* for plaintiff.

*Moore, Sills, Poling & Wooster,* for defendants.

Before: McGregor, P. J., and Bronson and Mahinske,* JJ.

Per Curiam.   In 1955, Helen Owen, plaintiff-appellee, opened a joint share account with her husband, Dwight Owen, in the Birmingham Federal Savings and Loan Association, defendant-appellant. The funds in the account were apparently derived from a land development entered into by Helen and Dwight Owen before their marriage.

Sometime in early 1959, marital difficulties apparently developed between plaintiff and her husband and Mr. Owen requested that both signatures be required to withdraw money in the account. He then informed Mrs. Owen that two signatures would now be needed to withdraw any funds and she checked with the bank, and verified this fact. The ledger card contained the words "both signatures required for withdrawals". These words were later crossed out. Proceedings were instituted to dissolve the marriage or to provide for separate maintenance, at about the same time this requirement was requested.

In April 1959, plaintiff became fearful that the two-signature requirement did not sufficiently protect her and so she called the defendant bank and requested that she be notified if her husband attempted any large withdrawals. A note to this effect was placed upon the account ledger card; the note was later erased. The defendant[1] did comply with this request in September 1961 when an agent of the bank called plaintiff and elicited her approval for an $1800 withdrawal by Mr. Owen.

In November 1962, an injunction was issued at the behest of Dwight Owen, which enjoined Helen

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Although there are several defendants in this case, the term "defendant" will be used.

Owen from removing any monies from banks in which she and Dwight Owen had joint accounts. A copy of this injunction was in the bank's file and it was noted upon the account ledger.

In July 1964, Dwight Owen went to the defendant bank and requested that the two-signature requirement be withdrawn and the money be placed in an account in his name only. This request was complied with by the bank. In August 1964, plaintiff discovered that the money had been withdrawn and informed the defendant that this was done without her knowledge or consent. Plaintiff testified that Mr. Blenman, a director of the bank, informed her that they were at fault and that the money would be put back.

The money was not put back in the account and plaintiff brought this action claiming that the defendant bank did not have authorization to transfer the funds without her permission and signature. At the time of trial Dwight Owen was not available for testimony, as he now resides in Florida.

In his opening statement at trial, counsel for the plaintiff stated that plaintiff was claiming damages for the loss of a lien right which resulted from a judgment of the Circuit Court that Dwight Owen pay support to plaintiff. The plaintiff's counsel also stated that no support monies were ever paid to plaintiff by Dwight Owen. Mrs. Owen was placed on the witness stand and testified that she had not received any support monies from Dwight Owen. The defendant then attempted to introduce records of a separate maintenance suit in Oakland County to refute plaintiff's testimony. After a conference in chambers, this attempt was denied and, in addition, plaintiff withdrew her claim for loss of lien right and was permitted to

explain to the jury why she did so.   Defendant's motion for a mistrial was denied.

During trial, defendant offered into evidence records of other banks on the issue of "ownership" of the funds on deposit at defendant bank.   This evidence was refused by the trial court and a separate record was made.   The separate record shows that Helen and Dwight Owen had other accounts into which some of the money from their land venture was placed and that Mrs. Owen withdrew all the funds from these other accounts.

The case was submitted to the jury which found defendant guilty of negligence and awarded plaintiff the sum of $23,060 plus interest.   After the motion for a new trial was denied, the defendant appealed to this Court.

Defendant-appellant's first allegation is that the court below erred by allowing the jury to decide the question of whether Dwight Owen had a right to change the account from a two-signature to a one-signature requirement for withdrawal and that instead the court should have instructed the jury that Dwight Owen had this right as a matter of law.   Appellant alleges that this was a legal question and that it is error to submit legal questions to the jury.

Plaintiff-appellee counters this argument by stating that this question has not been properly preserved for review because no such instruction was requested on the record and no objections were made to the instructions given.   Therefore, since the defendant failed to object as required by GCR 1963, 516.2, it may not assign the failure to give the instruction as error.

Plaintiff's statement that this instruction was not requested on the record is not a fair presentation because defendant did request the court to instruct

the jury in this manner in its first request to charge. Furthermore, the court stated that all instructions which were requested in writing would be filed in the case. With these facts in mind, it would seem that all requests to charge by both parties were sufficiently contained in the record, by reference to the file, and that they, therefore, should be reviewed on appeal.

Despite our finding that this issue should be reviewed, the defendant-appellant's position is not meritorious. Under the facts of the case at bar, it should be clear that Dwight Owen did not have a right as a matter of law to change the signature requirement and then withdraw all the money in the account. The fact that he had originally changed the requirement to one requiring two signatures should not give him an absolute right to change it back because that requirement protected *both* parties. This is especially true when one considers the facts that the plaintiff acquiesced in this change and that she later attempted to reinforce the protection it afforded her by requesting the bank to notify her when any attempt was made to make withdrawals.

Furthermore, the lone case cited by appellants, *Manufacturers National Bank* v. *Schirmer* (1942), 303 Mich 598, simply does not support defendant's position that Dwight Owen could change the joint account back to a one-signature requirement because he had requested the two-signature requirement in the first instance. In that case, a mother withdrew a deposit in a bank and opened a new account in her daughter's name, payable to either while both were living and to the survivor upon the death of one of them. The mother later added other deposits to this account. Subsequently, the mother informed the bank that any withdrawals

against the account were without her consent and knowledge. The mother later died and the daughter claimed the money in the account. A suit in interpleader was filed by the bank and the court ruled that the notice by the mother-depositor changing the designation of the account back to the mother's name only made it part of her estate. In the case at bar both Helen and Dwight Owen were depositors. Dwight Owen did not add another name to the joint account when he changed the signature requirement as the mother had added another name to her account in the *Manufacturers* case, *supra.* He was not the sole depositor and could not have stopped plaintiff from withdrawing funds simply by changing the account back to a one signature requirement. Furthermore, there was never a two signature requirement in the *Manufacturers* case, *supra,* further demonstrating that that case is in no way controlling in the instant matter.

Taking into consideration the fact that Dwight Owen had changed the account in the first instance and that plaintiff had requested the bank not to allow any withdrawals without calling her, we hold that whether Dwight Owen had the right to change the account back from a two-signature requirement to a one-signature requirement was a question of fact. As a question of fact, it was properly submitted to the jury.

Defendants-appellants next argue that since plaintiff testified that the funds in the account in question were owned by her, it was error to refuse to allow defendants to discredit plaintiff's statement that she "owned" the funds. Plaintiff testified that the funds in question came from a real estate development owned by both Dwight and Helen Owen.

Furthermore, defendant-appellant alleges that since one of the issues in this case was damages, it was error to refuse to admit evidence that some of the money from the real estate development owned by plaintiff and her husband had gone into accounts in other banks and that plaintiff withdrew all the funds of those accounts. Since the plaintiff testified that she owned all these funds, the jury was led to believe that Dwight Owen had appropriated more than his share of the funds from the real estate development. Defendant-appellant feels that the evidence which the court below failed to admit would have negated this misconception.

Plaintiff-appellee argues that the court did allow defendant to inquire as to the source of the deposits made in the account at issue. In addition, she argues that it was proper for the court below to refuse the defendant the latitude to inquire into the source of monies in other accounts because that was a collateral matter and was possibly an attempt by defendant to detail the wealth of plaintiff, thus prejudicing the jury. Plaintiff says that in Michigan the extent of the introduction of collateral matters on cross-examination is within the discretion of the trial judge and will not be reversed except in cases of abuse.

In his ruling on this matter the judge below said:

" * * * this separate record discloses no apparent transfers of funds from any other bank account into the Birmingham Federal Savings and Loan account, held by the two parties, and with which we are concerned in this cause. I will therefore rule that testimony as to these is simply an effort on the part of counsel and his client to show assets over and beyond this account as an influencing factor for the jury, but the information itself is not material to this cause and therefore will be collateral in nature and inadmissible."

While this is a difficult area, the law in Michigan is fairly clear that the trial judge is given great discretion in allowing collateral matters to be brought out on cross-examination. *People* v. *Ely* (1943), 307 Mich 452; 24 Michigan Law & Practice, Witnesses, § 118.

In the case at bar the issue to be decided was whether the defendant bank was negligent in allowing Dwight Owen to withdraw funds from a joint account. The existence of other accounts was purely collateral and irrelevant to the issue of defendant's negligence.

In addition, defendant's purpose in wanting the accounts admitted was to impeach plaintiff on another collateral matter, the issue of what monies Helen and Dwight Owen were each entitled to in their divorce or separate maintenance actions. Since the plaintiff withdrew her claim for a lien right, the divorce and separate maintenance actions were also collateral and impeachment on such matters was again within the sound discretion of the trial judge. In deciding whether to admit this evidence the judge below therefore did not abuse his discretion.

Defendant-appellant further alleges that allowing plaintiff to withdraw her claim for loss of a lien right, after introducing evidence of non-support by Dwight Owen, and further allowing plaintiff to explain to the jury why the claim was withdrawn, prejudiced defendant's cause and was reversible error. Once this claim of non-support was made it prejudiced the jury against defendant and could not be withdrawn without leaving that prejudice. Defendant contends that it should have been allowed to contradict that evidence or have a mistrial declared and it further points out that the Michigan Supreme Court has held that appeals to the

sympathy of the jury are improper and that such misconduct cannot be cured by a charge telling them not to consider such improper evidence.

Generally, as suggested by the plaintiff-appellee, the allowance of an amendment to the pleadings rests within the trial judge's discretion. In the present matter, in ruling on this issue, the judge below said:

"Now speaking on the question of sympathy again, and to repeat, the court believes that adequate instructions at the conclusion of the trial will preclude possibility of the jury being swayed by sympathy because of statements by counsel and testimony of the plaintiff in relation to the nonpayment of support.

The motion for mistrial is denied but the court will accept proper instructions from counsel which will indicate to the jury that they must not consider that testimony in any respect and exercise no sympathy towards the plaintiff because of it having been offered prior to this withdrawal of the claim for loss of lien protection."

A review of the defendant's requests to charge reveals that it made no attempt to draft any instructions to the jury regarding this issue. In view of the fact that the judge offered to instruct the jury on the sympathy issue if defendant requested an instruction, the fact that the defendant did not do so should bar it from having that issue reviewed now.

Defendant-appellant additionally suggests that since during the course of trial the court permitted into evidence an injunction issued at the request of Dwight Owen, the defendant should have been permitted to show that the injunction was not properly served on defendant and that statements by plaintiff on direct examination, concerning this legal

action, were inaccurate. This evidence should have gone to the jury and the exclusion of this material evidence constitutes reversible error.

Plaintiff-appellee argues that because no objection was made below to the introduction of the injunction and that because there is no showing on the record that the separate maintenance file was ever marked as an exhibit and offered into evidence by defendant, this issue was not properly saved for review.

Whether or not this objection was preserved for review, the trial judge did not abuse his discretion in not allowing evidence that the injunction was not properly served because that evidence was irrelevant to the issue of defendant's negligence. This injunction was brought in by plaintiff to show only that defendants had notice of the divorce proceedings between Dwight and Helen Owen; for this purpose, it was admissible.

Defendant-appellant further alleges that the court below erred in permitting plaintiff's counsel to put into evidence the indemnity affidavit from the case of Birmingham Federal Savings and Loan v. Dwight Owen. It submits that the only purpose for introducing this affidavit was to show the jury that if defendant lost the case being tried, it was claiming indemnity from Dwight Owen, thus causing the jury to be prejudiced for plaintiff. Defendant contends that this indemnity suit was in the nature of insurance and since defendant would have a claim of indemnity only if they were found liable to Helen Owen it was error to admit it into evidence.

The plaintiff-appellee contends that this affidavit is a public record, does not mention indemnity on its face, and was admitted only for the purpose of impeaching a witness on cross-examination. Citing *Cornelissen* v. *Ort* (1903), 132 Mich 294, plaintiff

further argues that the affidavit was signed by a party to the action and was admissible as an admission and for impeachment purposes.

The court below in admitting this evidence ruled as follows:

"It would seem to this court that in the area of matters which are a public record, the statements which are inconsistent and made under oath by an individual ought to be shown as to how much more of the file in the other case should be made available to this jury.

"The court will rule on that as we approach that problem, if we do, but it would indicate that there is an inconsistency in the position of this witness and I think this affidavit which may be considered separate and apart from that file. In so considering I am not ruling out the possibility of further pleadings from that file being brought in, but the court would rule that this is a public record, made under oath and that to the extent that it's inconsistent with the statements made in this cause, it may be received."

It seems clear that this statement was an admission against interest and should have been admissible for impeachment purposes despite the obvious possibility of prejudice to defendant. In any event, the question was again discretionary with the trial judge and he did not abuse that discretion.

Defendant next asserts that it was error to allow plaintiff to testify as to conversations with tellers of defendant bank without identifying them and giving defendant a chance to refute this testimony. Also in order to show that defendant was bound by the testimony of these tellers it would have been necessary to show that the statements were authorized by the defendant-bank. In Michigan it must be shown that the principal authorized the acts of an agent and these hearsay statements of the tellers

would not be admissible without proof that they had authority to speak on behalf of the bank. These statements could not be refuted without the identity of the tellers, were hearsay, and are not admissible under any theory.

Plaintiff-appellee contends that the testimony of what the tellers told Mrs. Owen, regarding the necessity of two signatures, was not objected to after an initial general objection and, therefore, is not preserved for review.

Assuming that the issue is properly before the court, plaintiff-appellee nevertheless contends that the testimony as to what the tellers told her was admissible. Plaintiff submits that her testimony was sufficient to establish the identity and agency of the tellers, and the fact that they were behind the counter of the bank meant that they were held out to the world as having authority to speak to customers regarding deposits. The statements of these agents were admissions and were admissible as part of the *res gestae*.

The court in admitting this testimony ruled as follows:

"I think the testimony of a teller employed by a financial institution, to the extent that it is material to this cause, is admissible because the bank employs the teller, authorizes that teller to make contact with the public and with the institution's customers. I do think, Mr. McConnell, in fairness to the defendants, you should make every effort to identify this teller to the extent that this witness remembers."

It is a clear exception to the hearsay rule that admissions by a party's representative are admissible. McCormick, Evidence, § 244 p 517. This exception should not be defeated in the instant case

simply because the plaintiff was unable to identify the tellers who made the admissions. In the situation of a bank, tellers speak for the bank and it would be impossible for a plaintiff to pick out which ones she spoke with. For this reason the judge's decision to admit this testimony was not reversible error.

Defendant-appellant further alleges that the court below should not have allowed plaintiff to introduce the letter written from defendant's attorney to Dwight Owen because defendant claimed the attorney-client privilege and because the only purpose for introducing it was to show that defendant felt some legal responsibility in this matter. The attorney-client privilege forbids an attorney from disclosing communications made by his client and this privilege extends to writings made in preparation of the case. Resultingly, defendant claims that this letter should never have been admitted into evidence and its introduction unfairly prejudiced the trial against defendants.

The plaintiff-appellee contends that this letter was properly allowed into evidence because Mr. Blenman was acting in his capacity as director of the defendant-bank and therefore this letter was an admission. This letter was intended to be published as it was addressed to Dwight Owen, and additionally, it was not made within the attorney-client privilege. This privilege is intended to protect communications between the attorney and his client and does not extend to communication to third persons. Communications made in front of third parties are not privileged and it logically follows from that proposition that communications to third parties are not privileged.

In deciding whether this letter should be admitted into evidence the court ruled as follows:

" * * * In relation to a ruling on this matter, the court would note first that Mr. Blenman is a director at this time. At this juncture the court is using it's personal knowledge, but has been advised of it on more than one occasion in chambers by both counsel, so the court must assume for the purpose of this particular issue that Mr. Blenman is a director, an officer of the association—defendant association.

"Furthermore, Mr. Blenman is joined in a conversation material to this cause between himself, Mr. Johnson and Mrs. Owen and that testimony is already in the record, and finally, this communication, proposed exhibit G was not in the attorney's file, but rather in the file of the association and I take it * * * .

" * * * I find no intent that the contents of the proposed exhibit should remain unpublished and there is no privilege and it may be used in the testimony in this case and properly identified."

It seems fairly clear that even if it is assumed that Mr. Blenman was acting in his capacity as an attorney of defendant, the defendant cannot claim the attorney-client privilege. The reason for this result is that communications by a client to his attorney which are intended to go to a third party do not fall within the privilege. In McCormick, Evidence, § 95, it is declared:

"A mere showing that the communication was from client to attorney does not suffice, but the circumstances indicating the intention of secrecy must appear. Wherever the matters communicated to the attorney are intended by the client to be made public or revealed to third persons, obviously the element of confidentiality is wanting."

Defendant-appellant next submits that the injunction, which was issued at the behest of Dwight Owen and which restrained the bank from paying funds to

Helen Owen, was improperly admitted into evidence because there was no showing that this injunction was binding on defendant; nevertheless, the court allowed it into evidence under circumstances which allowed the jury to consider that it was binding. Appellant submits that this procedure was reversible error.

Plaintiff-appellee says that this exhibit was not admitted over objection, because the record indicates that no objection was made. Furthermore, she argues that the defendant's general objection that the court should have instructed the jury pursuant to the statute (CL 1948, § 487.691 [Stat Ann 1957 Rev § 23.311]) was contrary to GCR 1963, 516.2. This rule requires that an objecting party state specifically "the matter to which he objects and the grounds for his objection," and thus this matter is not saved for review. In addition, whether the injunction was properly served was a collateral matter and was irrelevant to the issue before the court. The injunction was found in an account file of defendant and was admissible.

The injunction was admitted into evidence without objection. When it was mentioned during direct examination of Mrs. Owen the following exchange took place:

"*Q.* This September 1961 phone call from the Association to you at your home requesting your permission came, I guess, before the injunction was served on the institution in November of 1962?

"*Mr. Sills:* I will object to this question. I think it's leading and suggestive. There is no testimony about an injunction being served on the institution at this point.

"*Mr. McConnell:* The injunction is in evidence your honor, exhibit D.

"*The Court:* Your question was leading, Mr. McConnell.

"*Q.* Before I ask the next question, Mrs. Owen, I will call your attention to the fact that exhibit D, being an injunction secured from the defendant files and in evidence in this cause, bears the date of November 1962, and it is an injunction which your husband secured and had served on the Birmingham Federal people.

"*Mr. Sills:* I will object. There was no testimony that was properly served on the Birmingham Federal Savings. My objections to that have been noted previously. The fact that that is in the court file in the separate maintenance, we have no objection to, and the fact that was also in the possession of the defendant at some time we have no objection to. There is no testimony or any proofs we were properly served in the form Mr. McConnell is phrasing in his question."

After this exchange the injunction was not again mentioned. It is clear that whether this injunction was binding is not relevant to the negligence issue. The injunction was brought out by the plaintiff for the purpose of showing that the defendant-bank had actual notice, and, along with plaintiff's request that she be notified of any withdrawals, showed that defendant knew that the plaintiff and her husband were having marital difficulties. In this respect, the facts that it was in defendant's file and that defendant noted it upon the account ledger were relevant to show that defendant had notice of the separate maintenance proceedings and thus may have been negligent in giving Dwight Owen the money without consulting the plaintiff. For this reason, whether it was binding or not was irrelevant and the injunction should have been admitted.

In *DeKuyper* v. *DeKuyper* (1962), 365 Mich 487, cited by defendant, the court said that, despite the fact that an injunction was not binding, the bank was not free to transfer funds in violation of it

because it would be in contempt of court. It seems fairly clear from this reasoning that the injunction at least serves as actual notice, whether or not it is binding, and that, therefore, it was admissible to show that defendant-bank did have notice of the divorce proceedings. When combined with Mrs. Owen's requests to call her if any withdrawals were made, the injunction tended to negate any theory which defendant might have advanced that it was unaware of any reason for not giving Dwight Owen the funds. Resultingly, it was properly admitted.

Defendant's final allegation is that the jury verdict was against the weight of the evidence and contrary to law. This argument is without merit. There was ample evidence in the record to support a verdict finding defendant guilty of negligence. For example, if plaintiff and her expert witnesses were believed by the jury, the testimony that defendant was told not to allow any large withdrawals without notifying plaintiff and that this request was placed upon the account ledger would support a finding that defendant was negligent. This is especially true when one considers the fact that virtually the entire account was wiped out by this one withdrawal. This fact and other facts in the record clearly support the verdict rendered.

In none of the defendant's assignments of error did the court below clearly abuse its discretion and commit reversible error. In addition, the evidence presented in the record clearly supports the jury's verdict. For these reasons the judgment and verdict below is affirmed.

Affirmed.